IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
Southern Division

| | | |
|---|---|---|
| JUAN PABLO CARRILLO, *et al.*, | * | |
| Plaintiffs, | * | Case No.: GJH-13-641 |
| v. | * | |
| BORGES CONSTRUCTION, LLC *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

In this action, Juan Pablo Carrillo, Julio Cesar Sanchez, Luis David Castro, Enrique Patricio Correa, Roger A. Ramos, Carlos Humberto Calderon and Melvin Omar Lemus (collectively, "Plaintiffs") allege violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Laws, ("MWHL"), Md. Code Ann., Lab & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl. §§ 3-501 *et seq.*, against their former employer, Borges Construction, LLC; its successor corporations, Lu-Ma Construction, LLC, Deco Inc., and LMS Contractors Inc.; and the officers of said corporations, Silvestre Borges, Maria Nicoladle, and Salomon Nicolalde in their individual capacities (collectively, "Defendants"). ECF No. 45. This Memorandum Opinion and accompanying Order address Plaintiffs' Motion for Default Judgment. ECF No. 56. A hearing is unnecessary. *See* Loc. R. 105.6 (D. Md.). For the reasons stated herein, Plaintiff's Motion will be granted in part, and denied, in part.

## I. BACKGROUND

Defendant Borges Construction is a waterproofing and construction contractor and subcontractor, performing services in Maryland, Virginia and the District of Columbia. ECF No. 45 ¶ 12. It is a Maryland limited liability company with its principal place of business located in Gaithersburg, Maryland. *Id.* ¶ 3. During the relevant time period, Defendants Silvestre Borges, Maria Nicoladle, and Salomon Nicolalde were officers and active owners of Borges Construction. *Id.* ¶ 8. Plaintiffs worked for Defendants as constructions workers and laborers from 2010 through 2013.[1] *See* ECF Nos. 56-3 through 56-8, 60-1 ¶ 2. Plaintiffs' hours varied, working an average of 52 hours each week. ECF No. 56-1 at 9-18[2]; *see also e.g.* ECF No. 56-3 ¶ 4. During their employment, Plaintiffs allege that Defendants "willfully and systematically directed and forced Plaintiffs" to underreport the hours they worked each week on preliminary and postliminary work duties. ECF No. 45 ¶¶ 55 - 60. According to the Third Amended Complaint, each morning, Defendants required Plaintiffs to arrive at Defendants' place of businesses and load Defendants' work trucks before proceeding to the job location. *Id.* ¶ 56. Similarly, at the conclusion of Plaintiffs' work duties at the job site, Defendants required Plaintiffs to drive Defendants' equipment back to Defendants' place of business and return the equipment to a secure location. *Id.* ¶ 57. Plaintiffs allege that these work duties, including driving time, were performed by the Plaintiffs primarily for the benefit of Defendants and with Defendants' knowledge. *Id.* ¶¶ 58-59. Plaintiffs attest that these duties accounted for approximately seven additional unreported hours each week. ECF No. 56-1 at 10-18. Plaintiffs maintain that they were never paid overtime wages for these duties, calculated at one and one half time their regular wages. ECF No. 45 ¶ 62.

---

[1] One Plaintiff, Mr. Carrillo, began working for the Defendants in 2008 but his claims are limited by the applicable statute of limitations.

[2] All pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

Plaintiffs further allege that Defendants sought to shield themselves from liability by creating a series of successor corporations. *Id.* ¶¶ 64- 67. Plaintiffs state that around the time of the commencement of this lawsuit, Defendants ceased or substantially limited their operations as Borges Construction and began operating through the entity of Defendant Lu-Ma Construction, a Maryland limited liability company with its principal place of business in Gaithersburg, Maryland. *Id.* ¶¶ 4, 64. Furthermore, on or about May 20, 2013, Plaintiffs' allege that Defendants ceased or substantially limited their operations as Lu-Ma Construction, LLC and began operating through the entity of Defendant Deco Inc., also a Maryland corporation with its principal place of business in Rockville, Maryland. *Id.* ¶¶ 5, 65. Finally, in or about February 2014, in an alleged further attempt to limit their liability, Defendants ceased or substantially limited their operations as Lu-Ma Construction, LLC, Deco Inc., and Borges Construction and began operating through the entity of Defendant LMS Contractors Inc., also a Maryland corporation with its principal place of business in Rockville, Maryland. *Id.* ¶¶ 6, 66. Plaintiffs allege that all of the above referenced corporate defendants share a common identity of officer, director and stockholders; hold themselves out to the public as identical or near identical businesses and the entities perform the same or similar services for the same clientele. *Id.* ¶¶ 64 – 67.

At all times during the period of Plaintiffs' employment, Plaintiffs claim that Defendants were their "employers" for the purposes of the FLSA, MWHL and MWPCL. *Id.* ¶ 22. Furthermore, Plaintiffs' allege that Defendants were engaged in commerce or in the production of goods within the meanings of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). *Id.* ¶ 23. Finally, Plaintiffs state that they were employees who engaged in commerce or the production of good for commerce, under the FLSA, 29 U.S.C. § 207. *Id.* ¶ 24.

On February 28, 2013, Plaintiffs filed a Complaint for unpaid wages, liquidated damages and reasonable attorney's fees under the FLSA, MWHL, and MWPCL, ECF No. 1, which they have subsequently amended three times. ECF Nos. 3, 19 and 45. On August 17, 2016, Plaintiffs filed a Motion for Clerk's Entry of Default, ECF No. 54, and the presently pending Motion for Default Judgment was filed the next day. ECF No. 56. An Order of Default was entered by the Clerk of the Court against Defendants on September 8, 2016. ECF Nos. 57-59.

## II. STANDARD OF REVIEW

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment: rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Corp.*, No. DKC-11-0438, 2011 WL 5118328 at * 2 (D. Md. Oct. 25, 2011) (citing *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D. Md. 2002)). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). Rule 54(c) of the Federal Rules of Civil Procedure limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." In entering default judgment, a court cannot, therefore, award additional damages "because the defendant could not reasonably have expected that his damages would exceed th[e] amount [plead in the complaint]." *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded."

4

*Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Management Dynamics. Inc.*, 515 F.2d 801, 814 (2nd Cir. 1975); *Au Bon Pain Corp. v. Artect. Inc.*, 653 F.2d 61, 65 (2nd Cir. 1981)). While the Court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' District Council Pension, et al. v. E.G.S.. Inc.*, No. WDQ–09–3174, 2010 WL 1568595, at *3 (D. Md. Apr.16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

In considering a Motion for Default Judgment, the Court accepts as true the well-pleaded factual allegations in the Complaint as to liability, but nevertheless "must determine whether [those] allegations . . . support the relief sought in th[e] action." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md. 2013) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Preliminary and Postliminary Activities as Compensable Work under the FLSA

Here, Plaintiffs allege that Defendants failed to pay them overtime pay for compensable preliminary and postliminary work duties they completed, as required under the FLSA and MWHL. The FLSA requires that an employee must receive compensation "at a rate not less than one and one-half times the regular rate at which he is employed" for any hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1). "The MWHL similarly requires that employers pay …an overtime wage of at least 1.5 times the usual hourly wage for each hour worked in excess of forty hours per week." *McFeeley v. Jackson St. Entm't. LLC*, 47 F. Supp. 3d 260, 275–76 (D. Md. 2014) (internal quotation marks and citations omitted). "The MWHL is the State

5

parallel to the FLSA, and the requirements of that provision mirror those of the federal law. Thus, Plaintiffs' claim[s] under the MWHL stand[] or fall[] on the success of their claims under the FLSA.'" *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (internal citation and quotations omitted). "To prove a prima facie violation of this provision, a plaintiff must show the following: (1) that the plaintiff worked overtime hours for the employer and did not receive the prescribed compensation; (2) the number of overtime hours worked; and (3) that the employer had actual or constructive knowledge that the plaintiff worked those hours." *See Orellana v. Cienna Properties, LLC*, No. CIV.A. JKB-11-2515, 2012 WL 203421, at *2 (D. Md. Jan. 23, 2012)

As Plaintiffs claims rest upon the allegation that Defendants "willfully and systematically directed and forced Plaintiffs" to underreport the hours they worked each week on "preliminary and postliminary work duties," ECF No. 45 ¶¶ 55 – 60, the Court must first determine whether such activities properly constitute compensable work.

The Portal-to-Portal Act, 29 U.S.C. § 254, was passed by Congress to clarify the meaning of "work," left undefined under the FLSA. *See Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014). Among other things, the Portal–to–Portal Act "exempted employers from liability for future claims based on... activities which are preliminary to or postliminary to said principal activity or activities...which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." *Id.* at 517(internal quotations omitted).

Liability under the FLSA thus turns on whether or not an activity can be defined as a "principal activity" under the Portal-to-Portal Act. *See Jones v. Hoffberger Moving Servs. LLC*, 92 F. Supp. 3d 405, 410 (D. Md. 2015). "The Supreme Court has interpreted the term 'principal activity' to 'embrace[ ] all activities which are an *integral and indispensable* part of the principal

6

activities.'" *Id.* (internal citation omitted). Recently in *Integrity Staffing,* the Supreme Court held that an activity is integral and indispensable "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc.*, 135 S. Ct. at 519 (2014).

Plaintiffs contend that Defendants violated the FLSA by requiring Plaintiffs to arrive at Defendants' place of businesses and load Defendants' work trucks before proceeding to the job location and to drive Defendants' equipment back to Defendants' place of business at the end of the day. ECF No. 45 ¶¶ 56-57. Plaintiffs were employed by Defendants as day laborers and construction workers, work that could not been completed without access to the appropriate tools. Thus, the employers could not have disposed of the disputed activity, here the loading and unloading of equipment and tools, "without impairing their employee's ability to perform the work they were employed to perform." *Cf. Jones*, 92 F. Supp. 3d at 410 (discussing example where employer could dispose of the disputed activity). Indeed, several district courts, post-*Integral Staffing*, have held that similar preliminary equipment loading is considered "integral and indispensable" to an employees' work activities. *See, e.g., Gaytan v. G&G Landscaping Constr., Inc.*, 145 F. Supp. 3d 320, 325 (D.N.J. 2015)(holding that "loading trucks with necessary tools and materials" for landscaping jobs is compensable time under the FLSA); *Jones*, 92 F. Supp. 3d at 412 (D. Md. 2015)(holding that time spent loading trucks with moving equipment at company's warehouse was integral and indispensable to Plaintiffs' principal activities of loading and unloading Defendants' trucks at job sites). Thus, the Court finds that Plaintiffs' work loading and unloading equipment from Defendants' work trucks is integral and

indispensable to their principal activity as laborers and construction workers and Plaintiffs should have been compensated accordingly.[3]

Having established that Plaintiffs are owed compensation for their preliminary and postliminary work activities, the Court next turns to whether or not those hours consisted of overtime work. Here, Plaintiffs allege that they worked an average of 52 hours per week, ECF Nos. 56-3 through 56-8 ¶¶ 2-4 and ECF No. 60-1 ¶¶ 2-4, including approximately seven hours of preliminary and postliminary work duties for which they were never compensated. ECF Nos. 56-3 through 56-8 ¶ 8; ECF No. 60-1 ¶ 8. Plaintiffs also allege that at all times during their employment, Defendants Silvestre Borges, Maria Nicoladle and Salomon Nicoladle were the owners of Borges Construction, LLC and had the power to set their work schedules. *Id.* at ¶¶ 10,12. They also allege that Defendants "willfully and systematically directed and forced Plaintiffs" to underreport the hours they worked each week on "preliminary and postliminary work duties." ECF No. 45 ¶¶ 55 – 60. Together, this is sufficient to demonstrate that Defendants had actual or constructive knowledge of the hours Plaintiffs worked. Therefore, Plaintiffs have established a *prima facie* case of violations of the FLSA overtime provisions.[4]

### B. Liability

Having met their prima facie case, the Court will now address the liability of each Defendant. Plaintiffs assert claims against four corporate defendants, Borges Construction, LLC, and its successor corporations, Lu-Ma Construction, LLC, Deco Inc., and LMS Contractors Inc.;

---

[3] It is unclear, and Plaintiffs have not briefed, whether or not liability under the MWHL may be interpreted more expansively than the new, narrower, standard of liability under the FLSA articulated in *Integrity Staffing*. However, as the Court finds that Defendants are liable under the FLSA, there is no need to address any such discrepancy right now.

[4] These facts are also sufficient to establish a violation of the MWPCL, which requires that an employer pay "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505. "The Maryland Court of Appeals has held that 'both the [M]WHL and the [M]WPCL are vehicles for recovering overtime.'" *Juan Flores, et al., v. Environmental Trust Solutions Inc., et al.*, No. PWG-15-3063, 2016 WL 5459106, at *2 (D. Md. Sept. 28, 2016)(quoting *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625–26 (Md. 2014)).

8

along with the officers of said corporations, Silvestre Borges, Maria Nicoladle, and Salomon Nicolalde in their individual capacities. The Court will first discuss the liability of the corporate defendants and then that of the individual defendants.

### 1. Corporate Defendants

"Ordinarily, a corporation that merely purchases the assets of another corporation will not be liable for the debts or other liabilities of that corporation. However...[o]ne exception involves 'the continuation of business theory,' also known as the 'mere continuation' of business exception." *Progressive Septic, Inc. v. SeptiTech, LLC*, No. CIV.A. ELH-09-03446, 2011 WL 939022, at *10 (D. Md. Mar. 15, 2011)(internal citations omitted)(discussing the concept of successor liability generally in the context of a breach of contract case). This exception applies "'when the transferee corporation is merely a continuation or reincarnation of the transferor corporation'; to wit, a change in corporate form, but not in substance, has occurred." *Id.*

While the Fourth Circuit has not opined on whether or not successor liability is available under the FLSA, "the trend among the courts that have decided the question is to recognize successor liability in FLSA cases" including various district courts, along with the Ninth and Seventh Circuits. *Valdez v. Celerity Logistics, Inc.*, 999 F. Supp. 2d 936, 941(N.D. Tex. 2014); *see Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995)("we conclude that successorship liability exists under the FLSA"); *Teed v. Thomas & Betts Power Sols., L.L.C.*, 711 F.3d 763, 766 (7th Cir. 2013)( "We suggest that successor liability is appropriate in suits to enforce federal labor or employment laws"). This trend has also been noted within this district. *See Lippe v. TJML, LLC*, No. CIV.A. DKC 12-0260, 2013 WL 179217, at *5 n. 9 (D. Md. Jan. 16, 2013)(vacated as to one Defendant on unrelated grounds)("[a]s a matter of law, other circuit and district courts have extended liability under the FLSA to successor entities."). Thus, this Court finds that successor liability is appropriate under the FLSA.

While there is not a consensus as to how the Court should determine successor liability, both the Seventh and Ninth Circuits have noted that the Court should inquire into whether or not there was a continuity of business. *See Teed*, 711 F.3d at 766 ("Whether there is continuity between the operations and work force of the predecessor and the successor, as there is in this case, which favors successor liability on the theory that nothing really has changed); *see also Steinbach*, 51 F.3d at 845-46 ("Under the NLRA, successor liability can attach when 1) the subsequent employer was a bona fide successor and 2) the subsequent employer had notice of the potential liability. Whether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor.")(internal citation omitted). Furthermore, the Fourth Circuit, in constructing CERCLA, another federal remedial statute, also relied on a business continuity analysis to determine whether or not successor liability should apply. *See United States v. Carolina Transformer Co.*, 978 F.2d 832, 837–38 (4th Cir. 1992). Thus, without articulating a formal rule, the Court finds that allegations that a corporation was "merely a continuation or reincarnation of the transferor corporations," *Progressive Septic, Inc.*, 2011 WL 939022, at *10, support a finding of successor liability.

Here, Plaintiffs allege exactly that, stating that Defendants Lu-Ma Construction, LLC, Deco Inc., and LMS Contractors Inc were "merely a continuation or reincarnation of the transferor corporation," Borges Construction, LLC, ECF No. 56-1 at 7, created to shield them from liability. ECF No. 45 ¶¶ 64-67. In support of their claims, Plaintiffs state that around the time of the commencement of this lawsuit, Defendants ceased or substantially limited their operations as Borges Construction and began operating through the entity of Defendant Lu-Ma Construction. *Id.* ¶¶ 4, 64. Furthermore, on or about May 20, 2013, Defendants ceased or substantially limited their operations as Lu-Ma Construction, LLC and began operating through the entity of Defendant Deco Inc. *Id.* ¶¶ 5, 65. Finally in or about February 2014, Defendants

10

ceased or substantially limited their operations as Lu-Ma Construction, LLC, Deco Inc. and Borges Construction and began operating through the entity of Defendant LMS Contractors, Inc. *Id.* ¶¶ 6, 66. Plaintiffs also allege that all of the above referenced corporate defendants share a common identity of officer, director and stockholders; hold themselves out to the public as identical or near identical businesses, and the entities perform the same or similar services for the same clientele. *Id.* ¶¶ 64 – 67.

These facts, taken as true, demonstrate the exact situation that successor liability was intended to address, that is "preventing corporations from using asset sales to place those assets out of the reach of creditors." *Progressive Septic, Inc.,* 2011 WL 939022, at *10. Thus, the Court finds that Plaintiffs have sufficiently pled successor liability as to corporate defendants Lu-Ma Construction, LLC, Deco Inc., and LMS Contractors Inc. As Plaintiffs have sufficiently established a *prima facie* case of FLSA overtime violations as to Defendant Borges Construction, the Court finds that its successor corporations are also liable under the FLSA. As "the MWHL is the State parallel to the FLSA, and the requirements of that provision mirror those of the federal law," Defendants are also held liable under the MWHL. *See Brown,* 280 F.R.D. at 242 (internal citation omitted).[5]

## 2. Individual Defendants

Plaintiffs also seek to hold Silvestre Borges, Maria Nicoladle, and Salomon Nicolalde, officers of the above-referenced corporate defendants, liable in their individual capacities. The FLSA and MWHL define an "employer," in a similar manner as either "any person acting

---

[5] These facts are also sufficient to establish successor liability under the MWPCL, which defines "employer" as "any person who employs an individual in the State or *a successor of the person.*" Md. Code Ann., Lab. & Empl. § 3-501(emphasis added). While noting that "[] the Payment Law does not define the term 'successor,' and [ ]there are no published Maryland decisions analyzing successor liability for violations of the Payment Law" the Court of Special Appeals of Maryland found *Nissen Corp's* analysis of successor liability, including its adoption of the "mere continuation" of business exception, persuasive in reviewing a MWPCL arbitration decision. *Grindstone Capital, LLC v. Atkinson,* No. 1579 SEPT.TERM 2014, 2015 WL 6093213, at *3 (Md. Ct. Spec. App. Sept. 23, 2015)(discussing *Nissen Corp. v. Miller,* 323 Md. 613, 617 (1991)).

directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), or "a person who acts directly or indirectly in the interest of another employer with an employee." Md. Code Ann., Lab & Empl. § 3-401(b). Furthermore, federal courts have interpreted the definition of an employer "broadly to achieve Congress's intent to provide a remedy to employees for their employers' wage and hour violations." *Guzman v. D & S Capital, LLC*, No. MAB 14-CV-01799, 2015 WL 772797, at *4 (D. Md. Feb. 20, 2015)(quoting *Hurd v. NDL, Inc.*, No. CIV. CCB-11-1944, 2012 WL 642425, at *5 (D. Md. Feb. 27, 2012)).

"Whether a person qualifies as an employer turns on the 'economic reality' of the relationship between the employee and the putative employer." *Guzman*, 2015 WL 772797, at *4. This includes an examination of multiple factors "such as the person's job description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Id.* Here, Plaintiffs allege, and produce affidavits to support, that Defendants exercised control over the employment relationship by having the power to hire and fire Plaintiffs, the power to set and determine Plaintiffs' rate and method of pay, the power to set and control their work schedule, and the power to assign and supervise Plaintiffs' work duties. *See* ECF Nos. 56-3 through 56-8 and ECF No. 60-1 ¶¶11-14. Thus, the Court finds that Plaintiffs have alleged facts sufficient to show that Defendants Silvestre Borges, Maria Nicoladle, and Salomon Nicolalde are liable under the FLSA and MWHL in their individual capacities.[6]

---

[6] While the MWPCL's definition of employer is "more restrictive than the definition in the FLSA and the MWHL," individual liability has been found where, as here, the individual employers owned the corporation in question and exercised significant control over the employment relationship, for example by having the power to hire and fire the employees and set their rate of pay. *Reynolds v. Solo & AD, Inc.*, No. CV CBD-15-2021, 2015 WL 5882053, at *3 - *4 (D. Md. Oct. 2, 2015). Thus, the individual defendants here would also be liable under the MWPCL.

12

### 3. Willful Violation

Plaintiffs also request that a three year statute of limitations apply to their claims because Defendants' violations of the FLSA were willful. ECF No. 56-1 at 3.[7] The standard FLSA statute of limitations is two years, but it may be extended to three years if the violation of the Act was willful. *See* 29 U.S.C. § 255(a). An employer is willful in its violation of the FLSA if the employer knows, or shows reckless disregard as to whether, its conduct is prohibited by the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998). Negligent conduct is not enough to constitute "willful" conduct. *See id.* Plaintiffs, as the employees, "bear[] the burden of proof when alleging that a violation is willful." *See Robinson v. Empire Equity Grp., Inc.*, No. CIV. WDQ-09-1603, 2014 WL 6698407, at *5 (D. Md. Nov. 24, 2014). Here, Plaintiffs specifically allege that they worked an average of fifty-two hours each week and were "directed and forced to underreport" the hours they worked. *See* ECF Nos. 56-3 through 56-8 and 60-1 ¶¶ 4-5. Assuming the truth of these allegations, Plaintiffs establish that Defendants knew they were working overtime and "permit the reasonable inference that Defendants were either actively or recklessly disregarding the requirements of the FLSA." *Aguilar v. ALCOA Concrete & Masonry, Inc.*, No. CV TDC-15-0683, 2015 WL 6756044, at *2 (D. Md. Nov. 4, 2015); *see also Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 669 (D. Md. 2011)(finding that Plaintiffs who alleged that they were directed to record less time than they actually worked stated a claim for willful violation of the FLSA). Therefore, the three year of statute of limitations will be applied to Plaintiffs' claims. Plaintiffs filed their initial Complaint on February 28, 2013, ECF No. 1, and thus their claims of FLSA overtime violations will be granted with respect to claims that occurred on or after February 28, 2010.

---

[7] The statute of limitations for MWHL claims is three years. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues...").

13

### C. Relief

#### 1. Liquidated Damages under the FLSA

In addition to unpaid wages, Plaintiffs also request liquidated damages under the FLSA. ECF No 45 ¶ 74. Pursuant to the FLSA, an employer who violates overtime requirements "shall be liable to the employee or employees affected in the amount of their ...unpaid overtime compensation...and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are not seen as punitive, but as compensation for damages otherwise 'too obscure and difficult of proof.'" *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 637 (D. Md. 2005) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)). Courts have routinely held that there is a presumption in favor of an award of liquidated damages when it is determined that the employer has violated the FLSA. *Id.*; *see also Lanza v. Sugarland Run Homeowners Assoc., Inc.*, 97 F. Supp. 2d. 737, 739 n.9 (E.D. Va. 2000). Defendants have not responded and therefore have failed to meet their "plain and substantial burden of persuading the court by proof that [their] failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [them] more than a compensatory verdict." *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960). Thus, liquidated damages shall be awarded.

#### 2. Enhanced Damages under State Law

Plaintiffs also seek treble damages under the MWPCL. ECF No. 45 ¶ 88. The MWPCL states that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl. § 3-507.2(b). A bona fide dispute is "a legitimate dispute over the validity of the claim or the amount that is owing" such that the employer had a good faith basis for

14

withholding payment. *Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 543 (2000). Although the statute is silent on which party bears the burden of proof on this issue, the Maryland Court of Appeals has placed the burden on the employer to prove the bona fide dispute. *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 658 (2014) ("[I]t is not difficult to conclude that the employer, as the party withholding the wages, is uniquely qualified to offer evidence about its reason for doing so.").

Nonetheless, "an employee is not presumptively entitled to enhanced damages, even if the court finds that wages were withheld without a bona fide dispute." *Id.* at 662. Rather, trial courts are simply "encouraged to consider the remedial purpose of the [M]WPCL when deciding whether to award enhanced damages to employees'" *Id* at 663. "[I]t has become customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL, when the 'defendants [do] not offer any evidence of a bona fide dispute' to make liquidated damages inappropriate, [but the] plaintiffs [do] not offer any evidence of consequential damages suffered because of the underpayments.'" *Villatoro v. CTS & Associates, Inc.*, No. CV DKC 14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016)(quoting *Clancy v. Skyline Grill, LLC*, No. CIV. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012). While Defendants have not responded and thus have failed to offer evidence of a bona fide dispute, Plaintiffs have similarly failed to offer any evidence of consequential damages suffered. Thus, the Court will deny Plaintiff's request for treble damages under the MWPCL.

### 3. Damage Calculations

Plaintiffs assert that they are owed amounts ranging from approximately $3,000 to $24,000 in unpaid wages for overtime work completed on or after February 28, 2010. ECF No. 56-9. In Affidavits attached to the Motion for Default Judgment, each Plaintiff attests that the Plaintiffs' Damages Worksheet, ECF No. 56-9, is a "correct and accurate representation" of their

15

unpaid wages.[8] *See e.g.* ECF Nos. 56-3 ¶ 9; 56-4 ¶ 9. "[A]n employee's statement under oath 'as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed,' and if the employer does not successfully rebut the employee's statement, '[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate.'" *Calderon Recinos v. JMZ Constr., LLC*, No. CV DKC 15-0406, 2016 WL 3162820, at *3 (D. Md. June 7, 2016)(internal citation omitted).

Specifically, Plaintiff Juan Pablo Carrillo attests that he worked for Defendant from 2008 through approximately February 16, 2013, working an average of 52 hours per week and getting paid at a rate of $15.00 per hour. ECF No. 56-3 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 154 weeks within the statutory period. ECF Nos. 56-3 ¶ 8; 56-9.[9] Plaintiff Julio Cesar Sanchez attests that he worked for Defendant from approximately February 1, 2012 through approximately February 16, 2013, working an average of 52 hours each week and getting paid at a rate of $11.00 per hour. ECF No. 56-4 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 54 weeks within the statutory period. ECF Nos. 56-4 ¶ 8; 56-9. Plaintiff Luis David Castro attests that he worked for Defendant from approximately July 1, 2012 through approximately July 12, 2013, working an average of 52 hours per week and getting paid at a rate of $11.00 per hour. ECF No. 60-1 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 53 weeks within the statutory period. ECF Nos. 60-1 ¶ 8; 56-9.

---

[8] The Affidavit of Plaintiff Luis David Castro was submitted via a supplemental filing to Plaintiff's Motion for Default Judgment. ECF No. 60-1.

[9] Although Plaintiff Juan Carrillo attests that he started working for Defendant in 2008, his claims begin on February 28, 201. ECF No. 56-1 at 10 n. 4.

Similarly, Plaintiff Enrique Patricio Correa attests that he worked for Defendant from approximately December 1, 2012 through approximately June 28, 2013, working an average of 52 hours per week and getting paid at a rate of $11.00 per hour. ECF No. 56-5 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 30 weeks within the statutory period. ECF Nos. 56-5 ¶ 8; 56-9. Plaintiff Roger Ramos attests that he worked for Defendant from approximately January 1, 2011 through approximately November 30, 2012, working an average of 52 hours per week and getting paid at a rate of $11.00 per hour. ECF No. 56-6 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 100 weeks within the statutory period. ECF Nos. 56-6 ¶ 8; 56-9. Plaintiff Carlos Humberto Calderon attests that he worked for Defendant from approximately September 1, 2010 through approximately April 30, 2013, working an average of 52 hours per week and getting paid at a rate of $13.00 per hour. ECF No. 56-7 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 139 weeks within the statutory period. ECF Nos. 56-7 ¶ 8; 56-9. Finally, Plaintiff Melvin Omar Lemus attests that he worked for Defendant from approximately July 1, 2012 through approximately January 31, 2013, working an average of 52 hours per week and getting paid at a rate of $13.00 per hour. ECF No. 56-8 ¶¶ 2-4. Each week, he spent approximately seven hours on preliminary and postliminary work duties for which he was never compensated, totaling 30 weeks within the statutory period. ECF Nos. 56-8 ¶ 8; 56-9.

Accordingly, Plaintiffs are entitled to overtime wages as follows: Juan Pablo Carrillo is owed $24,255.00 in unpaid wages;[10] Julio Cesar Sanchez is owed $6,237.00 in unpaid wages;

---

[10] As an example, Mr. Carrillo's damages are calculated as follows: $15.00 (standard hourly wage) x 1.5 = $22.50 (overtime hourly wage). $22.50 (overtime hourly wage) x 7 (hours spent on uncompensated preliminary and

17

Luis David Castro is owed $6,121.50 in unpaid wages; Enrique Patricio Correa is owed $3,465.00 in unpaid wages; Roger Ramos Carlos is owed $11,550.00 in unpaid wages; Carlos Huberto Calderon is owed $18,973.50 in unpaid wages; and Melvin Omar Lemus is owed $4,095.00 in unpaid wages.

Plaintiffs will be awarded an equal amount in liquidated damages under the FLSA.[11] Thus, Juan Pablo Carrillo is owed a total of $48,510.00 in unpaid wages and liquidated damages;[12] Julio Cesar Sanchez is owed a total of $12,474.00 in unpaid wages and liquidated damages, Luis David Castro is owed $12,243 in unpaid wages and liquidated damages; Enrique Patricio Correa is owed $6,930.00 in unpaid wages and liquidated damages; Roger Ramos is owed $23,100.00 in unpaid wages and liquidated damages; Carlos Humberto Calderon is owed $37,947.00 in unpaid wages and liquidated damages; and Melvin Omar Lemus is owed $8,190.00 in unpaid wages and liquidated damages.

### 4. Attorney's Fees and Costs

Plaintiffs also request an award of reasonable attorney's fees and costs. ECF No. 45 ¶ 74, 80. Such relief is proper under both the FLSA, 29 U.S.C. § 216(b) and the MWHL, Md. Code Ann., Lab. & Empl. § 3-427(d). The amount of reasonable attorney's fees is "within the sound discretion of the trial court," *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984), and is determined by multiplying "the number of reasonable hours expended times a reasonable rate". *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In determining a

---

postliminary duties each week) x 154 (weeks in the statutory period) = $24,255.00. The remaining Plaintiffs' damages were calculated using the same formula. See ECF No. 56-9.

[11] Because Plaintiffs are not permitted to recover multiple times for the same injury, Plaintiffs will receive one payment under all applicable statutes and not a separate payment for each statute violated. See Clancy v. Skyline Grill, LLC., No. ELH-12-1598, 2012 WL 5409733, at *5 (D. Md. Nov. 5, 2012), report and recommendation adopted, No. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013) ("[A] party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery.").

[12] As an example, Mr. Carrillo's liquidated damages are calculated as follows: $24,255.00 (total unpaid wages) x 2 = $48,510.00. The remaining Plaintiffs' damages were calculated using the same formula. See ECF No. 56-9.

reasonable rate, "the Fourth Circuit has instructed district courts to consider certain factors including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Calderon Recinos*, 2016 WL 3162820, at *4 (quoting *Robinson*, 560 F.3d at 243–44).

In support of their claim for attorneys' fees and costs, Plaintiffs submit the declaration of their attorney, Jason D. Friedman, ECF No. 56-10, and an invoice specifying the hourly billing by Friedman and his paralegal with respect to the instant lawsuit and information regarding costs spent on process service. ECF No. 56-11. These materials indicate that Friedman's firm spent 32.63 hours on this case on behalf of Plaintiffs, at a rate of $135 per hour for paralegal time and $225 per hour for attorney time. ECF No 56-10 ¶¶ 1, 5. Friedman further attests that he has been barred since 2012 and that his practice is "heavily focused on employment law." *Id.* ¶ 1. These rates are fair considering the local guidelines, which note that a reasonable rate for lawyers admitted to the bar for less than five years is between $150 and $225 an hour. *See* Local Rule App. B (D. Md. 2016). Friedman also states that his firm has agreed to represent Plaintiffs on a contingency fee basis and has worked for three years, without compensation, to pursue Plaintiffs' claims, at significant opportunity cost to the firm. ECF No. 56-10 ¶¶ 8-9. In light of the multiple

Plaintiffs and Defendants involved in this case, along with its duration, the Court finds that Friedman's well-documented attorney's fees are reasonable. Thus, Plaintiffs are awarded $6,856.00 in attorneys' fees.

The record also substantiates the following expenses: $160 for service of process and $350 for filing fees. ECF No. 56-11. Thus, Plaintiffs are awarded $510.00 in costs.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment, ECF No. 56, is granted in full with respect to Plaintiffs' FLSA and MWHL claims. As for Plaintiffs' MWPCL claims, Plaintiffs' Motion is granted as to liability but denied with respect to their request for treble damages. Plaintiffs will therefore be awarded the following judgment: Juan Pablo Carrillo is awarded $48,510.00 in unpaid wages and liquidated damages; Julio Cesar Sanchez is awarded a total of $12,474.00 in unpaid wages and liquidated damages, Luis David Castro is awarded $12,243 in unpaid wages and liquidated damages; Enrique Patricio Correa is awarded $6,930.00 in unpaid wages and liquidated damages; Roger Ramos is awarded $23,100.00 in unpaid wages and liquidated damages; Carlos Humberto Calderon is awarded $37,947.00 in unpaid wages and liquidated damages; and Melvin Omar Lemus is awarded $8,190.00 in unpaid wages and liquidated damages.

Plaintiffs will also be awarded $6,856.00 in attorney's fees and $510.00 in costs. A separate Order follows.

Dated: September 30, 2016

GEORGE J. HAZEL
United States District Judge